**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Grant VAHOVICK, Defendant–Appellant.**

No. 98–1381.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1998.

Decided Nov. 12, 1998.

Peggy A. Lautenschlager, David E. Jones (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

James C. Murray (argued), Jacobson & Murray, Madison, WI, for Defendant–Appellant.

Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Grant Vahovick appeals the sentence he received after pleading guilty to one count of possession of a prohibited object in prison. Vahovick challenges the district court's determination that he committed a crime of violence and, therefore, qualifies as a career offender under the Sentencing Guidelines. The defendant also challenges the district court's decision not to consider a downward departure under the Sentencing Guidelines based on the threatening conduct of his victim. For the reasons stated herein, we remand for resentencing.

## I. BACKGROUND

On August 7, 1997, a federal grand jury in the Western District of Wisconsin returned a one-count indictment charging the defendant, an inmate at Oxford Federal Correctional Institution ("Oxford"), with possession of a prohibited object in violation of 18 U.S.C. § 1791. The charge related to an incident that occurred in the inmate dining hall at Oxford on June 10, 1997, in which the defendant approached another inmate, Jeremy Darin, and stabbed him in the head and neck with five sharpened pencils bound together with tape. Prison officials separated the two inmates and Darin was treated for wounds to his head, neck and back.

Vahovick claims that on numerous occasions in the days leading up to the incident in the dining hall, Darin and his friends had been pressuring him to perform oral sex on them. The defendant refused to comply with their demands and says he felt threatened by Darin. Vahovick claims that he did not report Darin's threats to prison officials because he did not want to be labeled a snitch or placed in segregation.

Following the June 10 incident, the defendant was charged with the unlawful possession of a prohibited object, the bundle of bound pencils, but not the attack itself. Vahovick pled guilty to the charge. At sentencing, the district court found that the offense to which the defendant pled guilty was a crime of violence. This determination lead to Mr. Vahovick's classification as a career criminal under the Sentencing Guidelines. The district court also refused to depart downward from the applicable sentencing guideline range pursuant to U.S.S.G. § 5K2.10 based on the alleged threatening conduct of inmate Darin.

## II. ANALYSIS

The defendant raises two issues on appeal. First, he argues that the district

court erred when it determined that, by possessing the bundled pencils, he committed a crime of violence and thus sentenced him as a career offender under the Sentencing Guidelines. Second, Vahovick argues that the district court violated his equal protection rights when it failed to consider a downward departure based on the threatening conduct of Mr. Darin.

■ An appellate court reviews *de novo* the district court's legal determination of whether a particular offense constitutes a crime of violence as defined in the Sentencing Guidelines. *United States v. Nelson*, 143 F.3d 373, 374 (7th Cir.1998). Section 4B1.1 of the Sentencing Guidelines imposes increased sentences upon career offenders. A defendant qualifies as a career offender if (1) he was at least 18 years old when the instant offense occurred, (2) the instant offense was either a drug offense or a crime of violence and (3) he has at least two prior felony convictions for either a drug offense or a crime of violence. U.S.S.G. § 4B1.1. The defendant meets the age and prior convictions requirements. He disputes only the court's determination that this offense is a crime of violence.

U.S.S.G. § 4B1.2(a) defines a crime of violence as a felony that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) … otherwise involves conduct that presents a serious potential risk of physical injury to another.

Vahovick argues that the offense for which he was convicted, possession of a prohibited object, does not contain as an element the use, attempted use, or threatened use of physical force, nor does it pose a serious potential risk of physical injury to another; thus he could not have committed a crime of violence as defined under the guidelines.

■ Courts must look only to the conduct set forth in the indictment to determine whether an offense constitutes a crime of violence. *United States v. Nelson*, 143 F.3d 373, 374 (7th Cir.1998). The district court found that the indictment charged the defendant with possession of an object designed and intended to be used as a weapon and that this, by itself, posed a serious potential risk of physical injury.[1] Vahovick argues that the court looked beyond the indictment to the underlying pencil attack when it determined that the charged offense presented a serious risk of physical injury to another because the indictment only charged him with possession, not use, of the weapon.

■ The general rule of this circuit is that possession of a weapon plus some overt action implying or indicating its use is a crime of violence. *United States v. Chapple*, 942 F.2d 439, 442 (7th Cir.1991). In *Chapple*, we stated that "[w]hile we agree that the potential for a dangerous, violent act is enhanced by the possession of any weapon … unless the use of the weapon is overtly implied it is not a crime of violence under the guidelines." *Id.* The defendant in *Chapple* was a felon who was riding in a taxi with a handgun tucked in the waistband of his pants. We held that the possession of a weapon in those circumstances did not imply use of that weapon.

■ The present case differs from *Chapple* in that here we deal with the possession of a weapon inside a prison. Clearly, prisons are inherently dangerous places and they present unique problems. Possession of a weapon in prison, by itself, implies a violent act. Unlike the felon who may arguably have a legitimate non-violent reason for possessing a weapon outside of prison, there is simply no acceptable use for a weapon by an inmate in a prison for there always exists in such possession the "serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Therefore, we hold that possession of a weapon in a prison setting is conduct overtly implying its use, and is thus, a crime of violence.

---

1. The indictment stated:

On or about June 10, 1997, in the Western District of Wisconsin, the defendant, GRANT VAHOVICK, being an inmate at the Federal Correctional Institution, Oxford, Wisconsin, knowingly and unlawfully possessed a prohibited object, specifically, several sharpened pencils bound together with tape, an object designed to be used as a weapon.

This decision is in accord with two other circuits that have addressed this issue. *See United States v. Young,* 990 F.2d 469 (9th Cir.1993) *and United States v. Romero,* 122 F.3d 1334 (10th Cir.1997). In *United States v. Young,* the Ninth Circuit held:

> In a prison setting, the possession by an inmate of a deadly weapon indeed presents a serious potential risk of physical injury to another. The felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. By contrast, we fail to discover a similarly "innocent" purpose behind the possession of a deadly weapon by a prison inmate. The confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others. By its nature, therefore, the possession of a deadly weapon by a prison inmate presents "a serious potential risk of physical injury to another." 990 F.2d at 472.

The Tenth Circuit followed the Ninth Circuit's reasoning when it held in *United States v. Romero* that possession of a weapon in a federal prison constituted a "violent felony" under the Armed Career Criminal section of the Sentencing Guidelines. 122 F.3d at 1341.

While the Tenth Circuit dealt with a readily recognizable deadly weapon in *Romero,* to wit, a revolver, we conclude, as did the Ninth Circuit implicitly in *Young,* that in a prison setting it makes no difference that the potentially lethal weapon in question is handcrafted. Hence, the district court's decision that Vahovick committed a crime of violence under the Sentencing Guidelines was correct.

■ The defendant's second argument is that the district court denied him equal protection under the law when it refused to depart downward from the applicable Sentencing Guideline range pursuant to U.S.S.G. § 5K2.10 based on the threatening conduct of inmate Darin. The standard of review for a challenge to the constitutionality of the application of the sentencing guidelines is *de novo. United States v. Lombard,* 102 F.3d 1, 3 (1st Cir.1996).

Section 5K2.10 allows the court to reduce the sentence below the guideline range if "the victim's wrongful conduct contributed significantly to provoking the offense behavior...." U.S.S.G. § 5K2.10. The trial judge refused to grant Vahovick a downward departure under section 5K2.10, stating:

> I am not going to take the victim's conduct into consideration insofar as a downward departure is requested. I think this is a situation, like many others in this courtroom, where prison inmates come in and say they thought they had to take matters into their own hands because the only option was to go into segregation, and I have ruled over and over again that the concern that prison officials aren't going to take you seriously or that you're going to have to go to segregation are not sufficient reasons [for] not using the chain of command and the system that the prison has in place for responding to complaints, and that responding with violence is not an acceptable option. R. 46 at 33.

■ The defendant argues that the district court's comments indicate an unconstitutional policy of depriving inmates equal protection under the law. By categorically refusing to consider giving inmates this downward departure, Vahovick argues, the district court treats inmates as a class differently than other defendants. However, as this Court has held, prisoners are not a suspect class entitled to heightened equal protection scrutiny. *United States v. King,* 62 F.3d 891, 895 (7th Cir.1995), *Wilson v. Giesen,* 956 F.2d 738, 744 (7th Cir.1992). Moreover, the decision to refuse the defendant a downward departure was well within the district court's discretion and, were we able to conclusively determine that the district court actually exercised this discretion, we would not even review that action. *See United States v. Dean,* 908 F.2d 215, 218 (7th Cir.1990). Unfortunately, the district court did not provide any case-related indication that it considered the downward departure before exercising its discretion not to grant it.

Had the district court referenced an individualized assessment of the defendant's argument and then decided not to depart

downward, we would not be faced with the need to remand. However, we cannot conclude with assurance, based on the comments made at the sentencing hearing, that the district considered a specific downward departure for Vahovick. Therefore, we vacate the defendant's sentence and remand for re-sentencing solely for reconsideration of the downward departure request.

## III. CONCLUSION

For all the foregoing reasons, we VACATE Mr. Vahovick's sentence and REMAND for re-sentencing.