NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 15, 2009
Decided August 6, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-3649

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:07-cr-103 WCL |
| BRETT JONES, *Defendant-Appellant*. | William C. Lee, *Judge*. |

**O R D E R**

Brett Jones moved to suppress crack cocaine that police officers found in his buttocks after they arrested him. The district court denied the motion, and a jury found Jones guilty of possessing crack with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Jones was sentenced to 130 months in prison. He filed a notice of appeal, but his appointed counsel is unable to discern any nonfrivolous claims to pursue and seeks to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Jones has not accepted our invitation to comment on counsel's motion, *see* CIR. R. 51(b); thus, we address only the potential issues

identified in counsel's facially adequate supporting brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Detective Darrick Engelman of the Fort Wayne Police Department was patrolling with his partner when they spotted a car driven by Jones. Engelman knew from past encounters that Jones was a drug dealer, and also knew that he was under investigation at that moment. When Engelman's partner determined from police records that Jones's driver's license was suspended, the officers executed a traffic stop and arrested Jones for that misdemeanor. A search at the scene disclosed over $2,000 in currency in his pockets.

When the detectives arrived at the police station with Jones for booking, they conducted a strip search. Engelman testified at the suppression hearing that reliable confidential sources had told the police that Jones typically transported crack in his buttocks. This practice, Engelman explained, is not uncommon among drug dealers, as it allows them to keep the drugs easily accessible and yet out of the reach of a simple pat-down search. And, he said, though Jones denied it, Jones had his pants unzipped and hanging below his buttocks when he was arrested. In a private room at the police station, officers ordered Jones to take off his pants and underwear. According to Engelman, as Jones took off his pants, the detective saw a bag of crack lodged between his buttocks. He instructed Jones to bend over, spread his buttocks, and remove the bag. Jones told a different story, although his submissions to the district court never ascribed any legal significance to the discrepancy. He claimed he was not transporting the crack between his buttocks, but instead had swallowed the bag of drugs in an earlier fit of depression. The police officers, he continued, somehow knew this and told him to reach into his anus and extract the bag, which was covered in blood and feces. The district court was incredulous that Jones would swallow 16 grams of crack just because he was depressed and thought Jones's demeanor suggested that his story was fabricated.

Jones moved to suppress the crack on the ground that the police lacked probable cause to conduct a body cavity search. The district court denied the motion, explaining that the police had reasonable suspicion that Jones was carrying contraband on his person based on tips from informants, Jones's arrest record, and the amount of cash that Jones, who admitted to Engelman that he was unemployed, was carrying.

In calculating a recommended guidelines range, the probation officer treated the currency as proceeds from earlier drug deals and converted the total to a corresponding amount of crack, using what the Drug Enforcement Administration said was the prevailing market rate in Fort Wayne. The drugs and drug-equivalent totaled 93.33 grams, so the offense level was 30 according to the 2007 version of the guidelines. *See* U.S.S.G.

§ 2D1.1(c)(5).  Combined with Jones's four criminal history points (three of them from a prior drug felony), the sentencing guidelines yielded a range of 121 to 151 months.

Counsel primarily considers whether Jones could argue that the district court wrongly denied his motion to suppress the drugs.  To justify a strip-search, police officers conducting a custodial arrest for a misdemeanor need, at most, reasonable suspicion that the arrestee is concealing weapons or contraband on his person.  *See United States v. Brack*, 188 F.3d 748, 758 (7th Cir. 1999); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1045 (7th Cir. 1995); *Mary Beth G. v. City of Chicago*, 723 F.3d 1263, 1273 (7th Cir. 1983); *accord Hartline v. Gallo*, 546 F.3d 95, 100 (2nd Cir. 2008); *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 62 (1st Cir. 2003); *cf. Powell v. Barrett*, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc) (holding that police booking arrestees into jail do not need any suspicion to conduct routine strip searches even for misdemeanor offenses).  We would determine whether the police reasonably suspected that Jones was hiding drugs on his body by evaluating the nature of the offense, Jones's appearance, and his prior arrest record.  *See Kraushaar*, 45 F.3d at 1045; *see also Hartline*, 546 F.3d at 100.

Even though the nature of a traffic offense does not suggest that the offender is hiding drugs or weapons on his person, it would be frivolous for Jones to argue, given the other factors, that the police did not have a reasonable suspicion that he was secreting drugs in his body.  In *Brack*, 188 F.3d 748 (7th Cir. 1999), we upheld the denial of a motion to suppress evidence seized by police during a strip search.  The defendant in that case, a suspect in an ongoing narcotics investigation, had been arrested for a traffic violation and aroused police suspicion when he asked to use the restroom as soon as he arrived at the station.  *Id.* at 758.  A strip search uncovered two bags of drugs lodged between the defendant's buttocks.  *Id.*  In this case, Jones likewise was the target of an ongoing drug investigation, and from prior encounters he was known to Engelman as a drug dealer.  Though jobless, he was carrying more than $2,000 in currency, and reliable confidential informants already had alerted police that Jones typically transported drugs in his buttocks.  Moreover, the district court credited Engelman's testimony that Jones had his pants unzipped and hanging below his buttocks, seemingly confirming that Jones had secreted drugs there.  It would be frivolous to argue that this available information did not create a reasonable suspicion.

Counsel identifies a multitude of other issues, and we agree that all would be frivolous.  First, it would be pointless to argue that the district court erred in failing to expressly acknowledge its understanding that *Kimbrough v. United States*, 128 S. Ct. 558 (2007), gives sentencing judges discretion to disagree as a matter of policy with the imprisonment ranges that result from applying the base offense levels for crack

convictions. Jones was sentenced after *Kimbrough* was decided, so we would assume that the district judge was aware of his discretion, *see United States v. Atkinson*, 259 F.3d 648, 653 (7th Cir. 2001), and simply declined to exercise it, *see United States v. Taylor*, 520 F.3d 746, 747-48 (7th Cir. 2008). Moreover, Jones had an obligation to raise the *Kimbrough* argument at sentencing if he wanted the district court to consider it. *See United States v. Filipiak*, 466 F.3d 582, 584 (7th Cir. 2006).

Next, it would be frivolous for Jones to challenge his sentence on the ground that the district court erred in finding that the seized currency was the proceeds of drug sales, or on the ground that the court used the wrong ratio to convert those proceeds into a quantity of crack. Jones did not object to the district court's adoption of these findings from the presentence report, even when the judge specifically queried his counsel whether she had any objections to the offense-level calculations. Counsel's negative reply might well have been a "knowing and intentional decision" that waived any argument on appeal, *see United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005), as counsel suggests to us here. But if the absence of an objection was "accidental rather than deliberate," *id.*, we would review the district court's determinations for plain error, *see United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Lewis*, 567 F.3d 322, 326-27 (7th Cir. 2009). Yet even under plain-error review, a challenge to either determination would be frivolous because a district court is entitled to accept as true any assertion of fact in a presentence report that is not contested by the defendant. FED. R. CRIM. P. 32(i)(3)(A); *United States v. Soto-Piedra*, 525 F.3d 527, 529 (7th Cir. 2008).

Counsel additionally considers whether Jones could appeal on the ground that the district court did not give him an opportunity to challenge the validity of the prior convictions the government said it would use in seeking an enhanced statutory penalty. *See* 21 U.S.C. §§ 841(b)(1)(B), 851(a). But Jones could not have challenged those convictions even if the district court had let him, as both were over five years old. *See id.* § 851(e); *United States v. Vinyard*, 539 F.3d 589, 593 (7th Cir. 2008). Moreover, Jones's guidelines range of 121 to 151 months and ultimate sentence were both within the statutory range, regardless whether the old convictions were used. Accordingly, challenging the validity of the convictions would have no effect on his sentence.

Counsel also correctly concludes that it would be frivolous to contend that the district court violated Jones's right to allocute at sentencing, *see* FED. R. CRIM. P. 32(i)(4)(A)(ii), given that the district judge addressed him personally and asked, "Mr. Jones, is there anything you wish to say on your own behalf?" *See United States v. Williams*, 258 F.3d 669, 674-75 (7th Cir. 2001). Lastly, Jones's prison sentence falls within a correctly calculated guidelines range; thus, we accord it a presumption of reasonableness. *See Rita*

*v. United States*, 127 S.Ct. 2456, 2462-64 (2007); *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir.2008); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir.2005).  At sentencing Jones did not advance any argument for a below-guidelines sentence, and counsel identifies none here.

Accordingly, we **GRANT** counsel's motion to withdraw and **DISMISS** the appeal.